KALASHEN v. TILL et al.

(Supreme Court, Appellate Division, First Department.  February 18, 1910.)

1. NEW TRIAL (§ 105*)—GROUNDS—MISCONDUCT OF PARTY—PERJURY.

In an action to foreclose a mortgage, defendant alleged, to avoid personal liability, that the owner of the bond and mortgage agreed to accept a conveyance of the property and discharge defendant's personal liability for the indebtedness, which conveyance was executed, and that such person was the real party in interest in the present suit and the present owner of the mortgage.  Plaintiff testified in the foreclosure proceedings that he purchased the mortgage before the agreement alleged was made, and that he was the absolute owner thereof, whereupon evidence of the agreement was excluded, and judgment was rendered against defendant for a deficiency.  Defendant offered to show, as ground for a new trial, that in a subsequent action by plaintiff against such person plaintiff stated in a verified affidavit that the foreclosure proceedings were merely brought in his name for the benefit of such other, who owned the judgment rendered therein.  Held, that while new trials for newly discovered evidence should only be granted where it clearly appeared that justice required it, and the fact that subsequent statements of a witness were different from his testimony at trial was not alone sufficient, a new trial should have been granted on the showing made; it appearing that the judgment was obtained by plaintiff's perjury.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 221–223, 229; Dec. Dig. § 105.*]

2. NEW TRIAL (§ 8*)—EFFECT—NEW TRIAL AS TO ONE PARTY.

The granting of a new trial as to a defendant in mortgage foreclosure proceedings on the ground of perjury by plaintiff therein, which pre-

vented defendant from avoiding personal liability for a deficiency, would not affect the judgment of foreclosure and sale thereunder.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 11; Dec. Dig. § 8.*]

Appeal from Special Term, New York County.

Action to foreclose mortgage by Mark J. Kalashen against Jacob Till and others. From an order denying a new trial after judgment against him for a deficiency, defendant Greenblatt appeals. Reversed, and new trial ordered as to appellant.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Abr. A. Silberberg, for appellant.

John Bogert, for respondent.

CLARKE, J. This was an action tried in October, 1907, to foreclose a mortgage. The judgment provided, in case of a deficiency upon a sale, for a deficiency judgment against the defendants Jacob Till and Pincus H. Greenblatt. There was a deficiency of $4,582.05, for which judgment was entered up against the appellant, Greenblatt.

The appellant in his answer, by way of avoidance, alleged that during February, 1907, he agreed with Max M. Pullman, the owner of the bond and mortgage in suit, that Pullman should accept conveyance of the equity in the mortgaged premises in release and discharge of the appellant's personal liability for the payment of the mortgage indebtedness, and that the conveyance under this agreement was in fact executed; that plaintiff was not the real party in interest, and that Max M. Pullman was the real owner and holder of the bond and mortgage in suit, and as such agreed to accept in payment thereof a conveyance of the equity of the mortgaged premises, which was in fact accepted and executed by Pullman in full payment, discharge, and satisfaction of the mortgage debt.

Upon the trial Lawrence E. Brown appeared for the plaintiff. He offered in evidence the agreement between Pullman and Greenblatt, dated September 10, 1906, by the terms of which Greenblatt assumed payment of the mortgage in suit, and also an assignment of the mortgage made by Pullman to Kalashen, the plaintiff, dated December 14, 1906, assigning the mortgage in suit. Kalashen testified:

"I have known Mr. Pullman for quite a number of years. I have never been interested in real estate transactions with him. This is the first real estate transaction I had with him. The transaction with Pullman about the mortgage I had on December 14, 1906. Q. Where was that assignment of mortgage made? A. This was made in my place of business, because Mr. Pullman owed me $6,000, and he gave me this mortgage, you see. * * * I handed all the records to my attorney, Mr. Brown. * * * I own absolutely the mortgage. Neither Mr. Pullman nor any one else has any interest in the mortgage. It is mine. I purchased it from Pullman."

The defendant attempted to show conversations with Pullman between December, 1906, and April, 1907, in reference to the releasing of this liability for the payment of moneys mentioned in the bond and mortgage, the agreement made, and the performance by Greenblatt by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the conveyance by him. This evidence was not admitted, upon the ground:

"That at the time of the proposed agreement, or alleged agreement, the title to the mortgage was not in the defendant Pullman, and, even if such agreement was made by him, it would be no consideration for it, as he was not the owner or holder of the bond and mortgage."

The defendant Greenblatt was, therefore, not permitted to prove his defense, and judgment went against him.

This motion for a new trial upon the ground of newly discovered evidence was made in December, 1909. After setting up the result of the former trial, the pleadings, and the evidence, the moving affidavit states that deponent has found that Mark J. Kalashen, the plaintiff, brought a suit in the Supreme Court, Kings County, against Max M. Pullman, as defendant, to recover $6,000 claimed as money loaned; that deponent found this out through a lis pendens published in the Times within the last month, and then examined the papers in said action; that Pullman defaulted on the trial, and judgment in favor of Kalashen was entered. Thereafter Pullman obtained an order to show cause, dated February 20, 1909, why that default should not be opened. In the papers on that proceeding it appeared that the defendant Pullman was married to plaintiff's sister; that Kalashen, the plaintiff herein, in opposition to the motion to open said default, verified an affidavit the 24th of March, 1909, in which, referring to the foreclosure action at bar he says:

"He [alluding to another witness] also can testify that the foreclosure proceedings were instituted by Lawrence E. Brown for and in behalf of Pullman and for his benefit and credit, and the only connection that I had with these proceedings was that the foreclosure of that in my name and the obtaining of this judgment, but all of this was done for the interest and benefit of the said Pullman, who now owns and controls the judgment on said mortgage and the proceeds thereof, for from the day that case was tried I personally knew nothing of the case, and know nothing of it to-day. I never retained Lawrence E. Brown, lawyer, never paid him a dollar in my life for legal services, and also beg leave to call the attention of this court that Lawrence E. Brown, in his own affidavit, does not say that I retained him, or that he appeared as my attorney. His statement in regard to having any connection with me at all, or the fact that he was present at the time, he was so present as the attorney for Max M. Pullman acting in his behalf and at his direction. Since the obtaining of the judgment in the foreclosure proceedings, I have never obtained a cent, and know nothing about it, and in fact the defendant in the foreclosure proceeding came to me immediately after the foreclosure judgment there obtained and offered to settle with me for $1,500, of which I told the defendant herein, Max M. Pullman, and he stated to me to do nothing, that he personally would attend to it, and that he could get for the judgment one hundred cents on the dollar."

The appellant asks, not a setting aside of the foreclosure, but a new trial, so far as his personal liability on the deficiency judgment is concerned, upon the ground that that judgment was obtained by the false testimony of Kalashen that he was the true and lawful owner of the bond and mortgage, and therefore no conversations or agreements entered into with Pullman, since discovered to be his brother-in-law, were admissible, and that, Kalashen having now made affidavit in another action, where he and Pullman are at odds, that he never pur-

chased the bond and mortgage, that he was only holding it for Pullman, that he never employed the attorney who appeared for him, and that the whole thing was for Pullman's benefit, who was the real party in interest, it is shown that there was such a fraud perpetrated upon appellant and upon the court that the judgment entered in consequence thereof should not stand.

We are of opinion that the motion should have been granted. The testimony given by Kalashen upon the former trial was material to the issue and was of the utmost importance. It absolutely precluded the defendant from presenting his defense. Kalashen swore that he was the absolute owner of the bond and mortgage. Of course, if that were so, the evidence offered was properly excluded. The statement in his affidavit in the Kings county action directly contradicts his testimony upon the trial in the foreclosure action, and, if he is now to be believed, was false, and knowingly false, at the time it was given.

Motions for new trials upon the ground of newly discovered evidence are not to be lightly granted. The fact that subsequent statements of witnesses are at variance with their evidence given upon the trial is not alone sufficient. Each case must be considered upon its own facts, and a strong case must be made out, leading to the conclusion that justice requires a new trial. Such case is made, we think, when a party to an action swears positively to a material fact, which is conclusive, and subsequently in a court proceeding swears as positively to the contrary. A judgment obtained by the perjury of a party should not be allowed to stand. Such a state of facts is presented upon this record as convinces us that the discretion of the Special Term was not wisely exercised.

Of course, the judgment of foreclosure and the sale thereunder are in no way affected; but, so far as the personal judgment against the appellant is concerned, the order appealed from should be reversed, with $10 costs and disbursements to the appellant to abide the event, and a new trial ordered of the issues presented by his answer, so far as the complaint demanded relief against him. All concur.